GREENWELL, ETC., ET AL. *v.* LINCOLN BAKERY.

[No. 18,532.   Filed April 27, 1954.]

*R. Vance Hartke,* of Evansville, for appellants.

*Isadore J. Fine, Joe S. Hatfield, Charles H. Sparrenberger, Eugene P. Fine* and *Hatfield, Fine, Hatfield & Sparrenberger* and *Edward E. Meyer* (of Counsel), all of Evansville, for appellee.

KELLEY, J.—The Industrial Board, upon due hearing, found that the decedent, upon whom the appellants

were dependent, "did not sustain an accidental injury arising out of and in the course of his employment" with appellee. The only question presented is the sufficiency of the evidence to sustain said finding.

It appears from the evidence and there seems to be no dispute concerning it, that decedent died as the result of a ruptured cerebral aneurysm. Appellants sought by their evidence to prove one or both of two theories as to the cause of the rupture of the aneurysm.

The first theory springs from the allegation of appellants' application that the decedent "was bumped on his head by an electric box." As to this there is no evidence that anyone saw the decedent bump his head on the switch box. There was testimony by a witness on appellants' behalf, that there was a trickle of blood on decedent's left temple and that decedent had said that he "hit his head on the switch box there." This witness further testified that he asked the decedent how he got the blood on his face and decedent replied that he didn't know because his head had been hit on the other side.

The autopsy report introduced by appellants contained these findings: "No external signs of injury were found"; "No evidence of fracture is found"; "No evidence of traumatic injury contributing to death is found"; and "This is a very typical case of ruptured miliary aneurysm. These are due to congenital damage to cerebral vessels." There was medical testimony that there was no evidence of a blow on decedent's head; and that the doctor did "not think that it (a blow) could have caused this rupture."

Appellants' second theory was that the ruptured aneurysm resulted from exertion of the decedent in doing his work which aggravated the pre-existing condition. A witness for appellants testified that dece-

dent's job required "extra effort" and, in the witness' opinion, "it was putting a strain on him (decedent)." A physician, called by appellants, gave testimony that any unusual effort might have caused the aneurysm; that unusual effort might have been an aggravation; that he did not know whether exertion caused death in this case but it possibly aggravated it.

This same witness further testified that it is very common for these conditions to rupture spontaneously even while the patient is asleep and without any incident; that it is actually impossible to tell what caused the rupture in this case; and that he would not be able to say that the working conditions would be a contributing factor producing the cause of death of this person (decedent). There was other medical testimony to the same general character and effect.

We deem it unnecessary to further detail the evidence pertaining to the said questioned finding of the Board, since it is apparent from that already referred to, and from the entire record evidence on the subject which we have read and examined, that the evidence is indefinite, inconclusive, conflicting, and disputatious.

Appellants held the burden of establishing each fact necessary for a legal award of compensation to them, including the fact that the decedent sustained an accidental injury arising out of and in the course of his employment with appellee. The Board possessed the exclusive prerogative of weighing the evidence, drawing permissible reasonable inferences therefrom, and determining whether appellants discharged their said burden.

The Board, in the fulfillment of its said duty, has reached a conclusion as to the ultimate fact upon the said particular issue presented to it and has embodied such conclusion in its finding of fact.

In view of the vast and consistent array of authority on the point, it may now be said to be axiomatic that we are powerless to disturb such finding unless ■ the evidence be of a character to force a contrary conclusion, and that to arrive at such opposite conclusion, we may not weigh the evidence. The rule is salutary even though, in stated cases, it may appear to foreclose the dispensation of adequate justice under circumstances indicating a condition warranting its modification.

The evidence in the record before us is not of such conclusive character as to require us to condemn the finding complained of.

The award is affirmed.

NOTE.—Reported in 119 N. E. 2d 29.